Good morning. Our first case is number 23-1327, United States v. Louis Davis. Mr. Campbell. Good morning, Your Honor. Matt Campbell, Federal Public Defender of the Virgin Islands, on behalf of Louis Davis. And I'd like to reserve five minutes for rebuttal. Thank you. I agree with the government's statement at page 43 of its answering brief that certain statements by the prosecutor may have approached the line in this case, but nevertheless find that to be a classic understatement. In fact, the prosecutor trampled across the line, kept going, never looking back. When we look at what happened in this sentencing, for ten full pages of transcript, the government argued the heinous nature of the offense, including threats to kill, stripping victims naked, assaults of both victims. Mr. Campbell, don't we need to consider that in the context of the arguments that have just been made by defense counsel, which went on for more than 20 pages, talking about the neuropsychology report and the death of his father and his child and the details about the report and his upbringing? You know, it could be read to be suggesting, without being explicit about it, a departure for diminished capacity under IPA 2.13 or for family circumstances. Again, not explicit, but if our concern is that there are being sort of implicit things suggested to the district court that might encourage the court to go below the low end of the range, why wouldn't it be appropriate in that context for the prosecutor to reinforce the gravity of the events to explain why it should remain at the bottom of the range? Yes, Your Honor. I think my answer to that would be twofold. First, when we look at the sentencing transcript as a whole, nobody interpreted it that way. At no point did the government object to defense arguments and say that the government is breaching the plea agreement. At no point did the district court make any reference to the factors and try to state that perhaps defense counsel was either breaching the plea agreement or was somehow arguing improperly. Both of those things happened regarding the government's allocution, in that there were numerous objections, and the district court at one point says, government, you're not even talking about the 3553A fact. So my first response to the court would be, nobody in the courtroom familiar with the case interpreted that. Secondly, and the government talks about the need to prevent downward variances, et cetera, and I understand that. Guidelines aren't mandatory. We all understand that. However, that argument would hold greater sway if the government presented arguments that could be seen as aggravating and then segued into some arguments, but in this case, the lower disappropriates because of X, Y, and Z. But didn't the prosecutor do just that, being explicit multiple times, that that was the recommendation of the government? The government did say that a number of times. However, simply saying, but we're asking for what we're required to ask for, is not enough. And I've studied numerous cases that say, wink and a nod, end runs are not sufficient. But again, if we look at those 10 pages, everything there is aggravating. And then there is a mention of, but the reason I'm asking for the low end is because I don't want to traumatize the victims again. That's the only thing in those 10 pages that speaks to why the low end. And in fact, that's an aggravating reason, too, because the reality is, by saying I don't want to victimize the victims again, the prosecutor was saying this crime was so heinous that they're scarred for life and I don't want them to suffer a PTSD effect by having to testify again. And that doesn't go to a 3553A fact. Sparing victims from testimony is not history and characteristics of the offender or nature and circumstances of the offense. That's all that's in those 10 pages. Then there's an objection. And there's more talk. And for the next two pages, I believe it is, or slightly more than that, the government then says, oh, by the way, the mitigation is self-serving, I find it biased, and not important. It's not until about, I think it's 13 pages into that whole section, that the government says something to the effect of, well, 14 years and three months is a long time. But by that time, the breach was in essence complete because of the severity of the aggravating evidence. And it wasn't until there were numerous objections and the district court said at some point, you're not talking about the 3553A factors, that the government loosely mentions, well, 14 years and three months is a long time. But what precisely did the government say that is different or something new that didn't appear in the pre-sentence reports of Mr. Davis or his co-defendants, or that hadn't already come up at the hearing of his co-defendant a couple weeks earlier? I'm not sure, well, I don't know what's in the PSRs of his co-defendants, so I can't really speak to that, because the government didn't provide them. I will candidly concede that a fair amount of the evidence of the offense was in Mr. Davis' pre-sentence report. However, that doesn't mean that the government is required to go on at length about the facts of the case. And frankly, I think this court's decision in Nolan Cooper, that actually cites Henry IV, Part 1, about sometimes valor is the better part of discretion, was an appropriate quote, because in this case, both the government and the court seem to say, well, it's important that the perspective of the victims be addressed at sentencing. That's not a requirement. I mean, I agree with the Victims' Rights Act. If they wanted to come speak, they could. But why is it inappropriate for the government to raise facts that have already been presented to the court, but to reinforce the significance of those in the face of 20-plus pages of new additional mitigation evidence in a report that had not previously been available to the prosecutor at the time of entering into the plea agreement? I think the answer to that, again, is twofold. Number one, nobody in the court understood that the defense was asking for a variance. Nobody. Not the prosecutor, not the district court, certainly the defense attorney didn't ask for one. You can say that, but it may be implicit in the prosecutor starting off and clearly responding to what has come before. Understood that the prosecutor didn't do that. The prosecutor simply argued that this was an incredibly heinous offense, gave no 3553A factors. So, where we end up is, if somebody just read those 10 pages and didn't know the history of the case or whatever, I think anybody familiar with the criminal justice system would say the prosecutor is either asking for a high-end guideline sentence or is asking for an upward variance. I agree with you in isolation, but we have to look at the context here, and what you've given your answer is fine. Just to finish up on this point, this would be a different situation if the government had presented those 10 pages and then said, but under the unique circumstances of this case, I find that the low end is appropriate because of, and then actually tied it into the 3553A. I want to make it clear, the government seems to be saying, I can strongly answer, and says that I'm arguing that the government has to agree with our mitigation. No, I'm not arguing that, but the government has to argue something to justify the low end sentence, and here the government argued nothing. Quick question about your reply brief. Do you acknowledge that your final objection was withdrawn? Yes. To what precise statements by the government did that withdrawal apply? Yes, Your Honor. There were numerous objections. I want to be precise on this one. There were numerous objections raised. Pages 153, 154, 162, 163, 164. At 164, the government had said something to the effect of, I can't speak to the mitigation. I don't remember the exact wording off the top of my head. I can look it up. I can't speak to the mitigation. I'm not saying it's untrue or something like that, and that's when the defense attorney said, I'm more comfortable with that. So it is that last statement by the prosecutor that the defense attorney then says, I'm okay with that. Well, it's preceded that Mr. Sears said, so I think that the government's saying they're not challenging our expert report, comma, I'm comfortable with that. So it relates to the challenge to the expert report. It relates to the, yes, on 164, the second, third line, Attorney Houston says, Your Honor, I specifically recognize, et cetera. So I think that Ms. Sears' reference is saying she didn't object to that prior statement by Mr. Houston. However, that in no way undoes the other objection, the rest of it. So it is our argument that the government's plain error arguments and certainly waiver are not taken well because the breach was complete long before that. Thank you. We'll hear your comment. Thank you. Thank you. Mr. Gilbert. Good morning, Your Honor. Adam Sleeper for the United States. Could you start with that last point because I don't understand the defense counsel's withdrawal to have applied to all of the objections that have been made. I understood it as Mr. Campbell just described it. Yes, Your Honor. So I think that there were two sets of objections here. I think the first objection was at page J, appendix 153 to 154, and that was that the defense counsel was not hearing the government recommend the sentence that they agreed on. And the statement there was, I just want to make sure that the government is saying that the sentence requested in the plea is what they have asked for. And immediately in response to that, the government went forward and did exactly that. So they provided exactly what defense counsel had requested there. The next set of objections begin on appendix 161. And I want to back up a bit from where that first objection comes in to the questioning that's going on between the court and the prosecutor. So the court says, so that must mean that your recommendation of a low-end guideline range, that must mean, and I'm not going to read the whole thing. That must mean your recommendation of a low-end guideline range is not as heavily focused. I won't say it's not focused at all, but I would say it's not as heavily focused on the psychological argument that the defense is making. And the prosecutor responds to that question, says that, you know, responding to the psychological argument. And then Attorney Sears says, Your Honor, if I may again, I'm really struggling here because it continually sounds to me like the government is reaching to say that that may support the defense's position. Not that that is the psychological argument as a whole that's being discussed there. And then if you go down to this later discussion, they continue to discuss the neurological evaluation and the psychological argument. And Ms. Sears then says, So I think that the government's saying they're not challenging our expert report. I'm comfortable with that. So this was very focused on what was being addressed with a psychological argument. And this all links back, I think, to that original question by the court. You put a lot of weight on the whole concept of waiver. But how is there not a breach here? This seems to be a situation like the Whitney case where all the arguments were serving no purpose other than increasing influence in the court to give a higher sentence. I mean, saying the only reason we really entered into this plea agreement is to save the victims. So that's the only reason. So you're free to do whatever you want. But arguably, if he hadn't agreed, we probably didn't have a case because they were not going to show up in court. Well, that has nothing to do with what the court's supposed to take into account in sentencing. And so he spends most of his time saying, this is why we did it. And guess what? If you're looking at the merits, this is your classic horrible case. These people are running around naked in the night. Not only did he do this, he made them go to the farm and get them scarred for life. How does this not fit within a classic breach situation? Your Honor, two points on that. I think first, yeah, I think I would have to concede that under Whitney, this would be a breach. But Whitney is not the law of the circuit. And we've provided various arguments in our brief for why Whitney should not be the law of the circuit. How about Nolan Cooper? Well, I think Nolan Cooper is a distinguishable case because Nolan Cooper is dealing with a guideline, dealing with guideline enhancements rather than 3553A factors. Does that make a difference? I think it does, Your Honor, because if it's a binary question of whether or not an enhancement applies or not, and the government provides the information showing it applies, I think there's more clearly a breach. The question of whether an argument is consistent when talking about the 3553A factors I think is a more holistic view. Now, I understand that Walker, well, excuse me, when there is an argument that it should be at the low end of the guideline range and there is no statutory mandatory minimum and we're in the post-Broker context and we're sort of looking at all of the circumstances, we think that that is a more holistic view. But what is there in the record to show that the government argued to the court that the low end of the guideline range was appropriate? What is there to bolster that position that they agreed upon in the plea agreement? Yes, Your Honor. Let me get you the cites. Your Honor, so I think that specific argument occurs at JA 156-158. And there, the government prosecutor highlights the very lengthy sentence that the defendant will be subject to if sentenced to the bottom of the guideline range. And that's 14 years and change of incarceration and 19 plus years of court supervision in light of the term of supervised release. And I think the prosecutor there very much explains, you know, this is a horrible offense, which I don't think is disputed by anyone. It's addressed in defense counsel's own argument at the start. And says, well, with all of that taken into account, with the very lengthy sentence that's going to be imposed here, in part due to the seven-year mandatory minimum that's applicable on the gun charge, this is a sentence that is sufficient to address all the seriousness, all the heinousness that we had previously discussed. And I think that would get back to my second point on your question. And that is that I think we'd be in a very different situation if the only argument for that sentence is those first 10 pages. If the government prosecutor had made that argument and then sat down. But that's not what happened here. The government made that argument, talked about some of the aggravating factors. Admittedly, in a significant amount of detail. And then after that, you know, identified that not wanting to put the victims on the stand was a factor, which while not one of the 3553A factors, is something that maybe the court could find persuasive in some way for going along with the recommendation in the plea agreement. And then went into the 3553A factor. Well, I don't know. I think that cuts the other way because it's a strong tell to the court that the government doesn't want to try the case because of victim reluctance or victim harm. But at the same time, it seems to send a signal to the district court that perhaps the punishment is insufficient. So I'm surprised by your argument here. It seems that I see it cutting the other way. What am I missing? I think, Your Honor, I would agree that it cuts both ways. I'm not going to stand up here and say it's purely a mitigating argument. But I think on the one hand, it does talk about, you know, it does reflect some of the trauma and seriousness of the crime, which could be viewed as aggravating. But on the other hand, it also indicates to the court that if we want to be able to enter into these plea agreements to avoid these sort of issues, that we really need the court to be going along with our recommendations in these instances because if the court doesn't, there might be less incentive to enter into these plea agreements, which would in turn require these individuals to testify in trial. Do you concede that if the defense hadn't advocated or pushed the issue of the new neurological events, that it would have been a breach for the prosecutor to do, say, what the prosecutor said after all of that evidence has been thrown in? Your Honor, if defense counsel were to have stood up and said, we've entered into a plea agreement, we're recommending a sentence at the bottom of the guideline range, and sat down, and then the prosecutor stood up and gave this 10 pages of argument and said nothing else, I would think that it would be very, very difficult for the government to argue that there wasn't a breach. But I think in light of the… So really, the failure here was just… Nobody talked about the elephant in the room, which is, are you seeking interference or not, right? If the prosecutor had stood up and said, Your Honor, I just want to seek clarification. I heard a lot there, a lot of it new, and a lot of it we didn't know when we entered into this deal. I want to ask, is counsel seeking interference? No, we're not seeking interference. Well, if that had been made manifest, then I don't see any reason for the prosecutor to give the 10 pages of argument, because that seems like the like and unhug problem, doesn't it? Well, I'm not so sure I would agree with that, Your Honor. I don't know that it turns on… You know, just as I don't know that the government's breach turns on an express request, I don't think that, you know, the request for the variance would turn on an express request for a variance. I think to sort of highlight the issue here, you know, we could imagine a circumstance where there's a plea agreement that bound both defense counsel and the government to argue for a sentence at the top of the guideline range. And sort of the counter… It's under the rule here. Does that then mean if a defendant raises any sort of mitigating evidence, they have breached the plea agreement so long as the government has not requested an upward variance? And I just don't think the court would take that view. And I think what really needs to be the focus is let's look holistically at the arguments that were made. Let's look holistically at the arguments that were made by defense counsel and by the government, and let's look holistically at the government's arguments. Let's look at everything that was said. And the question is, in light of what was said at this sentencing, in light of what the government said, is this a reasonable argument for a sentence at the bottom of the sentencing guideline range? And I think this is really context-specific. Well, clearly, the defendant's argument is a reasonable effort at the bottom of the guideline sentence, but I'm having trouble seeing how the prosecutor's being with the drug, how heinous the crime was, et cetera, fits that bill. And I understand that, Your Honor. And what's the prosecutor trying to achieve? I guess the answer is, well, to make sure there wasn't a downward variance. Yeah, and as long as the defense is not arguing for a downward variance, but saying, really, the low end is appropriate, it would seem that the prosecutor should say, you know what? That seems, for all these reasons, you shouldn't go higher in the guideline range than what we've agreed upon and sit down. Because that would be very probative evidence of why it should be at the low end. It's one thing if the defense says we think a variance is appropriate, but as long as the argument is a clue to supporting the concept of the low end of the guideline range, the prosecutor should just sit down. Your Honor, that would have been the safer way to go in this case. I'm not going to dispute that. But I think that there is still room for the government to make these arguments in a case where the guidelines are being applied and the sentence that they've agreed to recommend is not the statutory mandatory minimum. Now, in the first instance, whether or not a defendant requests a variance below, a variance can be granted by the court with no notice at all to the parties. But that request would have been a breach of the agreement from either direction, right? Well, it would be, Your Honor. But I don't think we're talking about anything expressed here on either side. The government didn't ask for anything. That's why we're here, unfortunately. If there had been more expressions, then there would have been an understanding and we wouldn't see this case. And I understand that, Your Honor. But I'm just saying, you know, while I don't think what the government does, you know, I think the case looks very clear, it doesn't turn on the express recommendation of the counsel. I also don't think that there should be some sort of per se express requirement on what the defendant is saying. You know, I think what we're looking at is we're looking at all the arguments being made. Who said the magic words of variance or not variance? You know, we talked about earlier that things that the prosecutor was saying might have been persuasive. In what way would they be persuasive or relevant to what was at issue before the court at this point, which should be 35-53A factors? The court didn't seem to think that what was being presented by the prosecution related to those factors at all and seemed confused about that. Are you arguing that that count of the details of the offense somehow did relate to this personal history and characteristics? Yes, Your Honor. I think it does relate to the personal history and characteristics. How so? I'm sorry, the circumstances of the offense, I think. It's not as if it's personal. Right, but the nature of the circumstances of the offense were the best argument for a top-of-the-guideline sentence or an upward variance. Were they not? No, I think I have to concede that, Your Honor. At the same time, the neurological report would have been the best argument for a downward variance. Correct. And that's what I think. And if this whole thing, the one thing we don't want sentencing judges to ever do is to impose criminal sentences based on misunderstandings. So based on everything we've heard today, isn't it a prudent thing to do just to get a do-over, make sure all the cards are on the table and people are a lot more explicit about what they're seeking and requesting? No, Your Honor. I do think there have been preservation errors here, and I think that a complaint error review... If we agree with your forfeiture argument, you know, they are astronomers, so we understand the position. Can I ask a question about your forfeiture argument? Because you seem to be saying that by making a statement that this was close to a breach and after a series of objections as to her particular rephrasing of it, defense counsel saying she was not comfortable with that, her own characterization of what had been said, that that amounts to a waiver. But when we're looking at preservation issues, isn't the question really, was the district court putting on notice of an issue or a problem here? Do we require a jury argument that we should be looking to a specific request for relief by counsel? No, Your Honor, and I apologize if that was the impression I was getting. I would agree with the court that notice is the issue, and my argument is that the statements by defense counsel indicated to the court that there was no longer an issue that needed to be resolved. But if you're withdrawing an objection, does it have to be pretty clear that that objection is withdrawn? And would you not agree that this comfortable about the objection to the psychological report doesn't clearly withdraw an objection to the whole way the prosecutor is urging the court vis-a-vis the victimization and the aggravation, et cetera? I mean, is it clear enough? How is it clear? I don't understand it at all as to how somehow that's, withdraws everything that's going on. I don't get that. Well, Your Honor, I think there were two discreet objections. And then I, you know, as the first one, that wasn't about the neurological report. Right. It was about the whole tenor of the argument by the prosecutor, which is what I think we're here about today. Well, I think defense counsel argues both. One is about the mitigation, the treatment of the mitigation evidence. So there's one is in the discussion, I think, of the aggravation, which that was where the first objection was. And he submitted that when defense counsel said, well, this is really just what I want, that it was sufficient for the government to do exactly what defense counsel said she wanted. And that wouldn't have put the court on notice that there was something that needed to be resolved. Turning to the second objections, the mitigation evidence, that was a set of objection that was a very discreet set of objections in that they had a conversation about the mitigation evidence. And then the government said what its position was. And the court asked, is that better? And defense counsel said, yes, I'm comfortable with that. And that's why it was waived. The whole concept of the prosecutor was vehemently arguing against the mitigation evidence. And if there's no variance requested, the only way you get to the low end of the guideline really is the mitigation evidence. So for the prosecutor to say, yeah, we totally object to that, you're ratcheting it up even without the rest of what he said. I don't think so, Mark. I don't know that that's how I would characterize what the government prosecutor was doing. I think that there was some acceptance there. And if I may, I know I'm over time, but just very briefly, even if the court were to not find waiver here, we would think that these statements would have indicated to the court, even if unintentionally, that there wasn't anything for it to resolve and it should be reviewed under plain error. Can I just get the government's view on who has the burden here? Should we think about this as if you're claiming a breach that it's the moving party that just has that burden all the way, or by pointing to certain statements that could be interpreted that way, that the burden then shifts to the government to explain those in a way that would assure the court there is a breach, so that if it's unclear, where does the burden fall? I mean, where does the pendulum end up where it is unclear what was understood by the parties and the court? Your Honor, the case law I see has indicated the burden is on the defendant. I'm not aware of any case law adopting that burden-shifting approach. All right, thank you, Mr. Sleeper. Good morning, Mr. Campbell. If you don't mind, Mr. Campbell, I'd like to begin with a remedy here. Should we vacate on demand for a new sentencing hearing given to enforce the bottom of the outline sentence, or should Mr. Davis be given the opportunity to withdraw his plea? I believe that the remedy we asked for was remand for sentencing in front of a different judge, and we'd be comfortable with that. But we would just want to address a couple of points that came up. We do believe that the reason. I'm sorry, let me ask a follow-up on that. Sure. If we're not going to reopen the case, giving him a chance to undo the plea itself, should we just order the imposition of the bottom of the guideline sentence? Or do we, in which case, the same judge could handle it? Or does it need to go to a different judge for a full-blown re-sentencing hearing and give that judge the opportunity to exercise his or her discretion? Your Honor, well, I certainly would not object to an order directing the court to sentence to the low end. I just want to be candid. I'm not familiar with a case law that would support that turning it into basically a C1C, one of those sorts. I'm happy to look and see if I can find anything and submit a 28-J letter if I do. But I don't want to take a position that I don't have any support. OK, great. But we certainly won't object. I think that the government made a significant concession when it said that if Whitney applies, this is an actionable breach that requires the remand that we've just been discussing. And I don't believe that it's efforts to distinguish Noah Cooper. But again, it tries to say, because that was about enhancements and this is 3553A, that that makes a big difference. The problem here is that the government made no efforts to argue any mitigating factors, any 3553A factors that would support a low-end sentence. It made no effort to do that. Well, how about it saying, well, gee, this sentence, 14 years is enough? I think if we want to talk about context, the problem with that is that the sentence that was being asked for here was not meaningfully longer than the sentence in the Cepeda sentencing that had already occurred. And that was essentially a mid to high range. So to simply say, well, this is a long sentence, everything was going to be a long sentence. The government didn't, for example, say, this is a long sentence. And if we look at nationwide what the sentences for this type of offense are, under the JSON data, all courts are sentencing to the low end, so you should do that. That might be a nuanced response. The government simply said, well, it's a long sentence. And I would also note that the government said that. I think that's around about 163 or 164, which is well after the 10 pages of aggravation. So that still wouldn't cure what had already occurred. Counsel, you had suggested earlier when I was asking about context that there wasn't anything said by the prosecutor that indicated that it was responsive to the concern of this being a very implicit request to go below the recommended range. But the prosecutor opens up saying, we've heard a lot about Mr. Davis. I'm not in a position to dispute the neurological assessments and all the background information, but I have some concerns with the conclusions because, essentially, not everyone with disabilities commits these kinds of offenses. And then he says, it's important to state for the record, although counsel didn't argue this, and I know the court is not viewing it this way, he knows the difference between right and wrong and has the ability to control his actions. And that's the prelude to this description. This event was an extended, protracted factual event. And it goes into all of this detail that we're talking about that certainly could support going higher. But in this context, it seems like it's responsive to the notion that the mitigating evidence, this neuropsychological evidence, might suggest, although he's tactfully not making explicit any accusation that defense counsel is making that kind of motion, that there's the other side that shows that this was knowing and deliberate. It wasn't a matter of some diminished capacity. Given that statement, and then on 152, sort of closing that out, saying, and I just referenced that, Your Honor, just to give the court some balance and perspective on counsel's arguments, why doesn't that give these statements enough of a context that we shouldn't view it as a breach? Well, I think, again, to use some of the government's phraseology about looking at this holistically, when we look at those 10 pages, we see government attacking the defense mitigation and arguing facts that are clearly aggravating, and doing nothing more than that. So the end result is, if the government's arguments are accepted, then all of Mr. Davis's mitigation is wiped out. And the only arguments that remain are how heinous, atrocious, and cruel this defense was. So the holistic view is, the government offered lots of aggregation and no mitigation, which means that they never meaningfully are advocated for a low-end sentence. Maybe the answer is, or what you should tell us is, how is it that your argument to the court was clearly just targeting to the low end of the guideline as compared to a variance? Mr. Davis's argument? Yes. How is that? Yes. And it's because if that's the case, if that argument is clearly saying low end of the guidelines, then it would seem to me they shouldn't be attacking the mitigation evidence, because that's the way you get to the low end. But how is it clear from the argument of defense counsel that it wasn't asking for a variance? Well, at no point did counsel for Mr. Davis try to attack the heinous nature of the offense. That was conceded in the sentencing memorandum, and the PSR factual statement was not objected to. Instead, all counsel sought to do was offer some context for what is clearly heinous facts. I thought your answer was going to be because they didn't say move them on to a downward variance. Well, I've never heard a defense lawyer seek a low guideline sentence without a post-booker saying, this is a good case for a downward variance. I would completely agree with that, Your Honor. At no point. You concede that if we send it back and the prosecutor is held to his bargain, the prosecutor could argue mitigation very strenuously. And there's still a chance that the district judge could impose a sentence in the middle of the guidelines, top of the guidelines, or even above the guidelines. That's the way this works, right? As a matter of law, Your Honor, I agree with that completely. And I agree the government, generally speaking, is entitled to say, we don't find that evidence compelling. But when the government agrees to recommend a low end sentence, if they're going to say none of that evidence is compelling, and then argue a whole bunch of aggravation, they've got to argue some reasons why the low end is a crime. It's an implicit breach. It's not an explicit breach. Precisely. OK. All right. Thank you very much, Mr. Campbell. Thank you, Mr. Sleeper. Very helpful for you as the court to take the matter under your advisory.